IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cv-03317-RBJ

IMAN MOHAMED ALI,

    Petitioner-Plaintiff,

v.

JUAN BALTAZAR, ROBERT HAGAN,[1]
KRISTI NOEM, TODD LYONS,
PAMELA BONDI,
in their official capacities,

    Respondents-Defendants.

---

## ORDER

---

This matter comes before the Court on petitioner-plaintiff Iman Mohamed Ali's (Mr. Ali) Petition for a Writ of Habeas Corpus (Petition), ECF No. 1, and Motion for a Temporary Restraining Order and Preliminary Injunction (Motion), ECF No. 3. Mr. Ali, a citizen and national of Somalia, challenges the lawfulness of his current immigration detention on statutory and constitutional grounds. *See* ECF No. 1 at 54-61; ECF No. 3 at 8-21. For the reasons set forth below, the Court agrees

---

[1] Petitioner named Robert Guadian, the former Director of the Denver U.S. Immigration and Customs Field Office, in his official capacity, as a respondent in this habeas petition. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes Robert Hagan, Guadian's successor in in that position, and directs the Clerk to update the caption accordingly.

and directs respondents-defendants (respondents) to release Mr. Ali subject to the same conditions that governed his supervision prior to his arrest.

## BACKGROUND

### I. Mr. Ali's Immigration History

The parties do not dispute the material facts of Mr. Ali's immigration history. *See* ECF No. 1 at ¶¶ 23-39; ECF No. 17 at 4-7.

Mr. Ali's family fled Somalia during a period of civil war and were granted refugee status in the United States, arriving in March 1996. ECF No. 1 at ¶ 23; ECF No. 17 at 4. In 1997, at age fourteen, Mr. Ali adjusted to lawful permanent resident status retroactive to his arrival in the United States. ECF No. 17 at 4.

In the early 2000s, Mr. Ali was convicted of several state criminal offenses for which he served prison time. *See* ECF No. 1 at ¶¶ 25-26; ECF No. 17 at 4. As a result, in 2013, U.S. Immigration and Customs Enforcement (ICE) determined that Mr. Ali was subject to removal from the United States. He was arrested and detained for removal proceedings. ECF No. 1 at ¶ 28; ECF No. 17 at 5. At that time, Mr. Ali did not seek relief from removal, and on May 2, 2013, an Immigration Judge ordered that he be removed. ECF No. 1 at ¶ 28; ECF No. 17 at 5.

However, ICE was unable to effectuate Mr. Ali's removal, and he was released several months later on an Order of Supervision (OSUP). ECF No. 1 at ¶ 28; ECF No. 17 at 5. After his release, Mr. Ali was convicted of another state crime,

2

aggravated motor vehicle theft. ECF No. 17 at 5. In February 2018, ICE obtained travel documents from the Somali Embassy, revoked Mr. Ali's release, and detained him to effectuate his removal. ECF No. 1 at ¶ 29; ECF No. 4 at 5. Mr. Ali moved to reopen his removal proceedings based on changed country conditions in Somalia, and in October 2018, the Board of Immigration Appeals granted his motion and remanded the case for Mr. Ali to contest his removal. ECF No. 1 at ¶ 30.

On March 28, 2019, an Immigration Judge again ordered Mr. Ali removed but granted deferral of removal under the Convention Against Torture (CAT), prohibiting his removal to Somalia. ECF No. 1 at ¶ 32; ECF No. 1-1; ECF No. 17 at 5-6. ICE detained Mr. Ali for an additional three months but, unable to effectuate his removal to a third country, released him again on June 26, 2019 pursuant to 8 U.S.C. § 1231(a)(3). ECF No. 1 at ¶ 32; ECF No. 17 at 6. Once again, Mr. Ali was released on OSUP, which provided, among other conditions, that he could be returned to detention if he committed additional crimes. ECF No. 17 at 6.

## II.   Mr. Ali's Rearrest and Current Immigration Detention

Following his release, Mr. Ali was twice convicted in Colorado state court for possession of a weapon by a previous offender, first, on July 13, 2023, and most recently, on January 12, 2024. ECF No. 1 at ¶¶ 34-35; ECF No. 17 at 6. He was sentenced to prison for those offenses. ECF No. 1 at ¶ 35; ECF No. 17 at 6.

On July 23, 2025, ICE arrested Mr. Ali as he was being released from state custody. ECF No. 1 at ¶ 36; ECF No. 17 at 6. Mr. Ali was processed by ICE as "an alien subject to a final order of removal for detention pending removal" under 8 U.S.C. § 1231, and he was transferred to the Aurora, Colorado immigration detention facility, where he remains. ECF No. 17 at 6-7. Mr. Ali states that ICE officers attempted to get him to sign paperwork accepting deportation to Somalia, and that when he declined, the officers asked him, "How do countries like Kenya and Uganda sound to you?" ECF No. 1 at ¶ 37. ICE later confirmed to Mr. Ali's counsel that they are attempting to secure a third country for removal, but "no information regarding formal requests or any specific countries" had been provided as of the Petition and Motion. *Id.*

On October 18, 2025, Mr. Ali was provided with his "90-day review paperwork" under 8 C.F.R. § 241.4(k)(2)(ii). ECF No. 1 at ¶ 38. The document states, without elaboration, that ICE denied release because there was a "Significant Likelihood of Removal in the Reasonably Foreseeable Future." ECF No. 18-1. Mr. Ali alleges that, contrary to ICE's regulations, he was not offered an opportunity "to submit any evidence in support of his release," and his attorney was not provided with prior notice of the review or a copy of the decision. ECF No. 1 at ¶ 38 (referring to §§ 241.4(d)(1), (3)). To this Court's knowledge, Mr. Ali has not received any further custody review.

4

In their response to Mr. Ali's Petition and Motion, respondents assert that "ICE, in coordination with the Department of State, continues to pursue avenues for Petitioner's removal from the United States." ECF No. 17 at 7 (citing to the Declaration of ICE Officer Irma Quinones, ECF No. 17-1 at ¶ 35, which contains the identical formulation and no additional information).

### III.   The Instant Petition and Motion

On October 21, 2025, Mr. Ali filed the instant Petition and Motion, alleging that his detention is unlawful on four independent grounds with multiple subgrounds. ECF No. 1 at ¶¶ 1-40; ECF No. 3 at 9-21. Specifically, Mr. Ali claims that his continued detention violates: (1) due process and 8 U.S.C. § 1231(a), as construed by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) constitutional, statutory, and regulatory protection against third-country removal without adequate due process; (3) constitutional, statutory, and regulatory protection against re-detention without adequate due process; and (4) his right to reasonable accommodations under Section 504 of the Rehabilitation Act. *See* ECF No. 3 at 8-23. He seeks, among other relief, his immediate release.[2] *Id.* at 23.

---

[2] Mr. Ali also requested that this Court enjoin respondents from transferring him outside the District of Colorado or removing him from the United States during the pendency of this litigation. ECF No. 1 at 62; ECF No. 3 at 23. To preserve its jurisdiction, the Court granted this request. ECF No. 9.

Respondents filed a Consolidated Response opposing all of Mr. Ali's asserted relief. ECF No. 17. They argue that Mr. Ali's detention for "a period reasonably necessary to secure" his removal is authorized under § 1231 and *Zadvydas*, and that his remaining claims lack merit. *Id.* at 21. Mr. Ali filed a reply. ECF No. 18.

The Court has reviewed the filings and now orders respondents to release petitioner subject to the conditions of his OSUP agreement.

## LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Section 2241 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention like the one at bar. *Zadvydas*, 533 U.S. at 688.

Where, as here, the briefing demonstrates that the petitioner's challenge is fundamentally legal in nature, the court need not hold an evidentiary hearing to resolve it. *See* 28 U.S.C. § 2243.

## ANALYSIS

**I.      Post-Order of Removal Detention of Noncitizens**

This case is governed by the statutory and constitutional limits on post-order of removal detention.

Under the Immigration and Nationality Act (INA), the Attorney General "shall remove" a noncitizen from the United States who has received a final order of removal "within a period of 90 days." 8 U.S.C. § 1231(a). During this window, known as the "removal period," detention is mandatory. *Id.* § 1231(a)(2)(A).

If, however, the noncitizen "does not leave or is not removed within the removal period," detention is sharply circumscribed. *Id.* § 1231(a)(3). At that point, the default is that the noncitizen shall be released "subject to supervision under regulations by the Attorney General." *Id.* § 1231(a)(3). But there is an exception: § 1236(a)(6) provides that certain noncitizens—those who are inadmissible or removable on account of criminal conduct or who the Attorney General deems "to be a risk to the community or unlikely to comply with the order of removal"—may be detained beyond the "removal period." *Id.*

Even where the government invokes this additional detention authority, it is subject to strict limitations. In *Zadvydas*, the Supreme Court found that § 1231 contains an implicit temporal limitation to avoid running afoul of due process concerns. 533 U.S. at 690 ("A statute permitting indefinite detention of [a

noncitizen] would raise a serious constitutional problem."). Because the purpose of civil immigration detention following a final order of removal is to effectuate removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Supreme Court recognized a presumptively reasonable period of six months. *Id.* at 701. After that period, if the noncitizen "provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to rebut that showing with sufficient evidence. *Id.* If removal is not reasonably foreseeable, the noncitizen is entitled to release, which "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700-01. While a noncitizen "may no doubt be returned to custody upon a violation of those conditions," indefinite redetention without foreseeable removal necessarily confronts the same constitutional issues. *Id.* at 701; *see also* § 241.4(l) (regulations detailing revocation of release).

## II. Mr. Ali's Detention Violates § 1231 and *Zadvydas*

In the instant matter, *Zadvydas* mandates Mr. Ali's release. Even if Mr. Ali's redetention was authorized at the outset by his recent criminal conduct, violating the terms of his supervised release, it has since become unconstitutionally prolonged. Under any calculation, Mr. Ali has now been detained more than six months and

8

respondents have failed to show "a significant likelihood" of effectuating his removal in the "reasonably foreseeable future."

Initially, there is no question that, at this point, Mr. Ali has been detained beyond the presumptively reasonable six-month period. Mr. Ali was detained during the 90-day "removal period" following his March 28, 2019 order of removal. *See* ECF No. 1 at ¶ 33; ECF No. 17 at 5-6. He was taken into custody again on July 23, 2025, and has remained detained since then. ECF No. 1 at ¶ 34; ECF no. 17 at 6. Thus, regardless of whether the *Zadvydas* six-month period is inclusive of *all* of a noncitizen's post-removal order detention or each period of detention is calculated individually, the government no longer enjoys the benefit of the presumption. *Compare Ghasedi v. Wamsley*, 2:25-cv-01984-RSM-BAT, 2025 WL 3699705, at *3 (W.D. Wash. Dec. 1, 2025) ("[t]otal length of confinement need not be consecutive" to exceed presumptively reasonable six-month period), *with Liu v. Carter*, 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) (clock restarts when a noncitizen subject to a removal order is again detained by ICE).

Next, Mr. Ali has carried his initial burden of showing that removal is not significantly likely in the reasonably foreseeable future. Mr. Ali has had a removal order since 2019. ECF No. 1-1 (March 28, 2019 removal order). In nearly seven years, including two periods when Mr. Ali was detained at taxpayer expense, the government has not affected his removal by finding a third country willing to accept

9

him. Absent some material change in circumstances, this history provides good reason to believe that removal is not foreseeable. *See, e.g.*, *Phan v. Warden of Otay Mesa Deten. Facility*, 25-cv-02369-AJB-BLM, 2025 WL 3141205, at *4 (S.D. Cal. Nov. 10, 2025) (habeas petitioner met his burden where government previously failed to deport him during removal period and there were no changed circumstances); *Trejo v. Warden of ERO El Paso*, EP-25-CV-401-KC, 2025 WL 2992187, at *5 (noncitizen who had been granted deferral of removal to his home country made initial showing that his removal was not foreseeable).

Respondents have done nothing to rebut this showing. The record contains no evidence of efforts that the government has made to secure a third-country destination for petitioner's removal, either before or after his re-detention. *See* 8 U.S.C. § 1231(b)(1)-(3) (describing circumstances where a noncitizen may be removed to a country other than their own). Although ICE informed petitioner's counsel that it was pursuing third-country removal, it has identified no country and described no formal requests or progress. ECF No. 1 at ¶ 37. Nor is there any evidence that the government has, at any time, sought to reopen his order deferring removal to Somalia under CAT on the basis of changed country conditions. *See* 8 C.F.R. § 1208.17(d) (explaining procedure for terminating deferral of removal).

Respondents' representation in their Consolidated Response that "ICE, in coordination with the Department of State, continues to pursue avenues for

Petitioner's removal from the United States" is unsupported by any factual detail. ECF No. 17 at 7; ECF No. 17-1 at ¶ 35. Equally unpersuasive is ICE's October "Decision to Continue Detention" for Mr. Ali, which states—without explanation—that the agency has determined there is a "Significant Likelihood of Removal in the Reasonably Foreseeable Future." ECF No. 18-1. Such "bare assertions" do not satisfy the government's burden under *Zadyvdas*. *Aguilar v. Noem*, 25-cv-03463-NYW, 2025 WL 3514282, at *5 (D. Colo. Dec. 8, 2025) (granting habeas petition where ICE made identical conclusory statements to those in this case).

Over the past year, there have been hundreds if not thousands of highly analogous challenges in district courts throughout the country to prolonged post-order of removal detention. This Court has not found any authority supporting the proposition that the government may meet its rebuttal burden by gesturing at the possibility of removing a noncitizen to an as-yet unnamed third country. To the contrary, "the government must make legitimate progress toward removal." *Arach v. Baltazar*, 25-cv-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025). Here, there is no evidence that such process has been started, let alone that any "legitimate progress" has been made. *Id.*

Even if respondents were now to assert they have selected a third country for removal or intend to reopen Mr. Ali's deferral under CAT, such representations would not suffice. Both avenues involve formal legal processes that afford Mr. Ali

11

substantial procedural protections.  *See e.g.*, *Jama v. Immig. & Customs Enf't*, 543 U.S. 335, 348 (2005) (individuals who "face persecution or other mistreatment in the country designated" as their place of removal "have a number of available remedies," by statute, regulation, and under international law, to "ensur[e] their human treatment"); *see also Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that "last minute designation" of removal country during formal proceedings "violated a basic tenet of constitutional due process: that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence").

Without deciding exactly what process would be due under these circumstances, the Court holds that, at this late hour, naming a third country or filing a motion to reopen Mr. Ali's CAT protection would not meet respondents' burden.  *See Zadvydas*, 533 U.S. at 701 ("as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future'" necessarily shrinks).  Therefore, his present detention is unlawful.

## CONCLUSION

To be clear, the Court does not condone Mr. Ali's history of repeated criminal offenses.  This history reflects an individual who has little respect for the law and little appreciation for the opportunity he was given to live in this country.  But for

the reasons set forth in this Order, the Court must conclude that respondents' continued detention violates petitioner's statutory and constitutional due process rights under *Zadvydas* (Counts I, II, and III of the Petition). The Court will not rule on petitioner's other claims. *See Aguilar*, 2025 WL 3514282, at n. 4. The remedy for this violation is for Mr. Ali to be released and restored to his previous conditions of supervision. *See Martinez v. Lyons*, 2:25-cv-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) ("The remedy for a *Zadvydas* claim is generally release of petitioner under conditions of supervision.") (collecting cases)).

It is hereby ORDERED that:

1. The Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, ECF No. 1, is GRANTED;[3]

2. Respondents SHALL RELEASE Mr. Ali no later than 48 hours after the issuance of this Order;

3. Mr. Ali SHALL BE RESTORED to his prior conditions of supervised release (OSUP); and

---

[3] Because the relief requested in Mr. Ali's Motion is coextensive with the relief sought in—and granted under—the Petition, the Motion is respectfully denied as moot. *See Caballero Loa v. Baltazar*, 25-cv-03120-NYW, 2025 WL 2977650, at *9 (D. Colo. Oct. 22, 2025).

13

4. Within five (5) days of this Order, the parties SHALL FILE a joint status report informing the Court of the status of Mr. Ali's release and whether any additional proceedings in this matter are required.[4]

Dated: January 27, 2026        BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Court Judge

---

[4] To the extent petitioner requests attorney's fees, ECF No. 1 at 63, he is directed to file a separate motion complying with the Federal Rules of Civil Procedure and the Local Rules.